175 P.3d 594 (2008)
Candy SINGLETON, on behalf of herself and others similarly situated, Appellant,
v.
NAEGELI REPORTING CORPORATION, Respondent.
No. 35234-6-II.
Court of Appeals of Washington, Division 2.
January 15, 2008.
*595 Guy William Beckett, Beckett Law Offices PLLC, Roblin John Williamson, Attorney at Law, Kathryn A. Williams, Williamson & Williams, Seattle, WA, for Petitioner(s).
Bradford James Fulton, Carter & Fulton PS, Everett, WA, Stephen L. Pettler, Harrison & Johnston, PLC, Winchester, VA, for Respondent(s).
BRIDGEWATER, P.J.
¶ 1 Candy Singleton appeals from the trial court's decision under CR 12(b)(6) that Naegeli Reporting Corporation was exempt under the Washington Consumer Protection Act, chapter 19.86 RCW (CPA). We hold that administrative regulations did not specifically permit the complained of actions (i.e., inflating the number of pages in its transcripts by adding tab spaces and inserting new paragraphs which made the transcripts more expensive than they should have been) and thus do not qualify for exemption from the CPA. We reverse and remand for trial.

FACTS
¶ 2 In 2001, Candy Singleton filed a personal injury lawsuit in Kitsap County. Through her attorney, Singleton contacted Naegeli Reporting Corporation (Naegeli) to provide court reporters to report and transcribe oral testimony at depositions in her case.
¶ 3 Naegeli is a legal services firm that provides various services to legal professionals, including court reporting. It independently contracts licensed court reporters to record legal proceedings. According to Naegeli, when a party requests transcription of a legal proceeding, the court reporter transcribes the record and forwards that transcription to Naegeli. Naegeli then places the transcripts in a "standard" format. Clerk's Papers (CP) at 61, 85. Naegeli maintains that the standard format it uses:
[I]ncludes synchronization of the written transcript to the audio (or video) recording of the proceeding, key-word indexing, digital scanning of all exhibits, condensed versions of the transcript, and formatting of the text into a standardized form based on the guidelines promulgated in WAC 308-14-135 and the interpretations thereof disseminated by the Washington State Department of Licensing and the Washington State Attorney General's office.
CP at 61.
¶ 4 Singleton employed Naegeli to record depositions occurring on August 22, 2002; December 2, 2002; December 12, 2002; and June 3, 2003. Through her attorney, Singleton requested, paid for, and received transcripts of the depositions from Naegeli.
¶ 5 Singleton filed this action against Naegeli on December 12, 2005, on behalf of herself and similarly situated parties, claiming unjust enrichment and violation of the CPA.[1] She alleged that Naegeli was unjustly enriched because it charged and received "payment for the additional transcript pages which would not have been produced had [Naegeli] complied with Washington regulations, industry standards, and its own standards." CP at 18. She also alleged that Naegeli's practices "constitute unfair and deceptive acts and practices which are unlawful and are in violation of the Washington CPA." CP at 19. Singleton's precise complaint was that Naegeli inflated the number of pages in its transcripts by adding tab spaces and inserting new paragraphs, making the transcripts more expensive than they should have been.
¶ 6 On March 23, 2006, Naegeli filed a motion to dismiss the action under CR *596 12(b)(6). But it also submitted materials outside the pleadings as evidence to support its motion. In her response, Singleton also filed materials outside the pleadings as evidence to support denial of the motion. We cannot determine from the record whether the trial court treated this as a motion for summary judgment under CR 56 or decided it under CR 12(b)(6).[2] At a hearing on May 12, 2006, the trial court dismissed both the unjust enrichment and the CPA claims. But the trial court granted Singleton leave to file an amended complaint for her unjust enrichment claims.
¶ 7 Singleton filed her amended complaint on May 22, 2006. On June 16, 2006, the trial court then entered its decision dismissing the CPA claim and denying dismissal of the unjust enrichment claim. Singleton then filed a motion for reconsideration on June 26, 2006. The trial court denied that motion on July 18, 2006.
¶ 8 On August 16, 2006, Singleton filed a notice of discretionary review to this court. Following oral argument, our commissioner entered a ruling granting review on October 31, 2006.

ANALYSIS

I. Jurisdiction Over Appeal
¶ 9 As an initial matter, Naegeli asks us to dismiss Singleton's appeal as untimely. It contends that Singleton failed to note her motion for reconsideration for hearing within 30 days as CR 59(b) required. But Naegeli's argument lacks merit.
¶ 10 Application of court rules to a particular set of facts is a question of law that an appellate court reviews under a de novo standard. Buckner, Inc. v. Berkey Irrigation Supply, 89 Wash.App. 906, 911, 951 P.2d 338, review denied, 136 Wash.2d 1020, 969 P.2d 1063 (1998).
¶ 11 "A necessary prerequisite to appellate jurisdiction is the timely filing of the notice of appeal." Buckner, 89 Wash. App. at 911, 951 P.2d 338. "An appellant generally has 30 days from the entry of judgment to file its appeal." Buckner, 89 Wash.App. at 911, 951 P.2d 338 (citing RAP 5.2(a)). But a timely motion for reconsideration will extend that deadline. Schaefco, Inc. v. Columbia River Gorge Comm'n, 121 Wash.2d 366, 368, 849 P.2d 1225 (1993);[3]Buckner, 89 Wash.App. at 916, 951 P.2d 338; RAP 5.2(a), (e). "[F]ailure to note the motion at the time it is served and filed does not affect the extension of time for appeal under RAP 5.2(e)." Buckner, 89 Wash.App. at 916, 951 P.2d 338.
¶ 12 In this case, Singleton timely filed and served her motion for reconsideration. The trial court entered its order dismissing Singleton's CPA claim on June 16, 2006. Singleton filed and served her motion for reconsideration of that order on June 26, 2006, 10 days after the order for which she sought review. Singleton also filed her note for motion docket for her motion for reconsideration on June 26, 2006.
*597 ¶ 13 But Naegeli further argues that because Singleton noted her motion for reconsideration for July 21, 2006, 35 days after the court's initial order dismissing her CPA claim, her motion for reconsideration was "not timely disposed." Br. of Resp't at 42. Naegeli concedes that Singleton complied with Kitsap County Local Rule CR 59(b), but it argues that KCLRCR 59(b) is inconsistent with Civil Rule 59(b) and therefore ineffective. But again, Naegeli's argument lacks merit.
¶ 14 CR 59(b) provides in pertinent part:
A motion for a new trial or for reconsideration shall be filed not later than 10 days after the entry of the judgment, order, or other decision. The motion shall be noted at the time it is filed, to be heard or otherwise considered within 30 days after the entry of the judgment, order, or other decision, unless the court directs otherwise.

CR 59(b) (emphasis added). KCLRCR 59(b) states that a motion for reconsideration "shall be noted on the trial judge's departmental motion docket to be heard not sooner than thirty (30) but not later than forty (40) days after entry of the judgment, decree, or order, unless the court directs otherwise." Naegeli argues that KCLRCR 59(b) is improper because it enlarges the time a court can take action under CR 59(b). See CR 6(b) (stating that a court "may not extend the time for taking any action under rules . . . 59(b)"); CR 83 (superior courts may adopt local rules that are consistent with statewide rules); GR 7. But Naegeli's statutory interpretation is erroneous.
¶ 15 Contrary to Naegeli's assertion, KCLRCR 59(b) is consistent with CR 59(b). By its terms, CR 59(b) authorizes trial courts to establish noting dates for reconsideration motions that are different than those set in the rule. This is apparent from the clause "unless the court directs otherwise." See CR 59(b). Moreover, the committee comment to CR 59 states that the drafters intentionally included the word "directs" rather than "orders" in the CR 59(b) clause to provide flexibility that would permit the clerk of the court to adjust the scheduling of hearings when conflicts arise.[4] 15 Karl B. Tegland, Washington Practice: Civil Procedure § 38.20, at 49-50 (1st ed.2003).
¶ 16 Therefore, the Kitsap County Superior Court has adopted KCLRCR 59(b) to govern the filing of a motion for reconsideration and noting a motion for reconsideration for hearing. It seems that Kitsap County Superior Court adopted this rule as a matter of scheduling and judicial economy because it hears civil motions on its Friday calendar. See KCLCR 77(k)(2). Thus, KCLRCR 59(b) is consistent with both the plain language of CR 59(b) and the drafters' intent.
¶ 17 Because both the trial court and Singleton complied with KCLRCR 59, Singleton's notice for motion docket for her motion for reconsideration was timely. Singleton noted her motion for reconsideration for hearing on July 21, 2006, 35 days after entry of the June 16, 2006 order for which she sought reconsideration. This was within the *598 time limit set forth in KCLRCR 59(b) ("not sooner than thirty (30) days and not later than forty (40) days"). And the trial court actually entered its order denying Singleton's motion for reconsideration on July 18, 2006, 31 days after June 16, 2006. Thereafter, Singleton filed her notice of discretionary review on August 16, 2006, 29 days after the court's entry of the order for which she sought review. Accordingly, Singleton filed her notice of discretionary review within 30 days of entry of the order denying her timely motion for reconsideration. Therefore, Singleton's notice of discretionary review is timely and we have jurisdiction to adjudicate it. RAP 5.2(a), (b), (e).

II. Consumer Protection Act Cause of Action
¶ 18 Singleton appeals the trial court's "Order Granting In Part And Denying In Part Defendant's Motion To Dismiss Pursuant to CR 12(b)(6)." CP at 302. Where, as here, the facts are not at issue, we conduct a de novo review of rulings on motions for summary judgment and motions to dismiss for failure to state a claim under CR 12(b)(6). Reid v. Pierce County, 136 Wash.2d 195, 201, 961 P.2d 333 (1998); DeWater v. State, 130 Wash.2d 128, 133, 921 P.2d 1059 (1996); Wells v. Olsten Corp., 104 Wash.App. 135, 139, 15 P.3d 652 (2001).
¶ 19 The CPA prohibits unlawful and unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce. RCW 19.86.020. The purpose of the CPA is to protect the public and to foster fair and honest competition. RCW 19.86.920. The CPA expressly states that courts should liberally construe the statute so that "its beneficial purposes may be served." RCW 19.86.920. Moreover, in order to serve those beneficial purposes, courts must narrowly construe the scope of the exemption provisions of the CPA. Vogt v. Seattle-First Nat'l Bank, 117 Wash.2d 541, 552, 817 P.2d 1364 (1991) (construing the scope of the exemptions under the CPA).
¶ 20 RCW 19.86.170 codifies the exemption portion of the CPA and reads in pertinent part:
Nothing in this chapter shall apply to actions or transactions otherwise permitted, prohibited or regulated under laws administered by the insurance commissioner of this state, the Washington utilities and transportation commission, the federal power commission or actions or transactions permitted by any other regulatory body or officer acting under statutory authority of this state or the United States . . . PROVIDED, FURTHER, That actions or transactions specifically permitted within the statutory authority granted to any regulatory board or commission established within Title 18 RCW shall not be construed to be a violation of chapter 19.86 RCW.
RCW 19.86.170 (emphasis added).
¶ 21 As directed by the statute, actions or transactions of those regulated under Title 18 RCW must meet the standard set forth in the second proviso,[5] i.e., that such actions or transactions are "specifically permitted" by a regulatory agency in order to qualify for exemption from the CPA. In re Real Estate Brokerage Antitrust Litig., 95 Wash.2d 297, 301, 622 P.2d 1185 (1980). An action or transaction is not exempt from the CPA merely because it is regulated generally or merely because a regulating agency complies with it. Vogt, 117 Wash.2d at 552, 817 P.2d 1364; Edmonds v. John L. Scott Real Estate, Inc., 87 Wash.App. 834, 844, 942 P.2d 1072 (1997), review denied, 134 Wash.2d 1027, 958 P.2d 313 (1998). Instead, the agency must take "`overt affirmative actions specifically to permit the actions or transactions engaged in' by the person or entity involved in a Consumer Protection Act complaint." Vogt, 117 Wash.2d at 552, 817 P.2d 1364 *599 (quoting In re Real Estate Brokerage Antitrust Litig., 95 Wash.2d at 301, 622 P.2d 1185).
¶ 22 Accordingly, to properly claim a Title 18 RCW exemption, Singleton had to establish that the complained of activities and transactions were authorized by statute and that acting within this authority, the agency took overt affirmative action to specifically permit the actions or transactions that Naegeli employed. See Real Estate Brokerage Antitrust Litig., 95 Wash.2d at 301, 622 P.2d 1185; Sing v. John L. Scott, Inc., 83 Wash.App. 55, 69, 920 P.2d 589 (1996), reversed on other grounds, 134 Wash.2d 24, 948 P.2d 816 (1997).
¶ 23 Chapter 18.145 RCW regulates the practice of court reporting in Washington. It establishes requirements for certification, identifies unprofessional conduct, and provides sanctions for misconduct. Chapter 18.145 RCW authorizes the director of the Department of Licensing (DOL) to adopt rules necessary to implement the chapter. RCW 18.145.050. Following RCW 18.145.050, DOL promulgated former WAC 308-14-135 (1991) to address transcript preparation format. At the time that Naegeli prepared Singleton's transcripts, the regulation required:
(1) No fewer than twenty-five typed lines on a standard 8½× 11 inch paper.
(2) No fewer than ten characters to the typed inch.
(3) No fewer than sixty characters per standard line.
Former WAC 308-14-135. The regulation was amended in 2004 to permit, under (2) "[n]o fewer than nine and no more than ten characters per inch of text" and under (3) "[n]o fewer than fifty-four and no more than sixty characters per standard line of text."
¶ 24 Naegeli and Singleton agree that chapter 18.145 RCW authorized the director of DOL to promulgate former WAC 308-14-135. See RCW 18.145.050. But the parties disagree about whether the regulation specifically permits the complained of activities and transactions. Singleton argues that although the director of DOL exercised its right to adopt WAC regulations, those regulations did not specifically permit Naegeli's formatting changes to her transcripts. Naegeli argues that the WAC rules do specifically permit the complained of formatting. Naegeli's interpretation of "specifically permitted" within the context of the CPA is misguided.
¶ 25 There are several Washington decisions addressing whether actions or transactions are specifically permitted within the meaning of the CPA, many of which both Singleton and Naegeli construe to benefit their respective arguments.
¶ 26 In State v. Tacoma-Pierce County Multiple Listing Service (Tacoma-Pierce County MLS), for example, the Supreme Court addressed whether the actions and transactions by multiple listing associations were specifically permitted under the statutory exemption language set forth in Title 18. State v. Tacoma-Pierce County MLS, 95 Wash.2d 280, 286, 622 P.2d 1190 (1980). There, the Supreme Court found that because chapter 18.85 RCW "may, for the commission of certain acts, have a license suspended, revoked or denied (RCW 18.85.230), this does not apply to a multiple listing association but only to individual license holders." Tacoma-Pierce County MLS, 95 Wash.2d at 285-86, 622 P.2d 1190. It went on to hold that DOL or Real Estate Commission (regulating agencies) did not take affirmative actions to approve the complained of conduct of the multiple listing services. Tacoma-Pierce County MLS, 95 Wash.2d at 287, 622 P.2d 1190. Specifically, the Supreme Court held that "[t]here [was] nothing in RCW 18.85 which confer[ed] on the Department of Licensing or the Real Estate Commission the authority to approve the restrictions for membership in a multiple listing service which were allegedly required by defendants." Tacoma-Pierce County MLS, 95 Wash.2d at 287, 622 P.2d 1190. Therefore, the multiple listing services' actions were not exempt from the CPA under RCW 19.86.170.
¶ 27 Likewise, in Edmonds v. John L. Scott Real Estate, Inc., Division One of this court addressed whether John L. Scott's method of disbursing earnest money was specifically permitted and therefore exempt from violation of the CPA. Edmonds, 87 *600 Wash.App. at 844, 942 P.2d 1072. The regulating organization in Edmonds promulgated regulations regarding disbursement of earnest money. Edmonds, 87 Wash.App. at 844, 942 P.2d 1072. Division One noted that WAC 308-124E-013(3) allowed disbursement of earnest money only under the terms of the earnest money agreement or by written authorization from the buyer and seller. Edmonds, 87 Wash.App. at 844, 942 P.2d 1072. But because the terms of the agreement in the case did not allow disbursal of the earnest money and there was no dispute as to which party was entitled to the funds, the agency that released the funds was not immune from the CPA claim. Edmonds, 87 Wash.App. at 845, 942 P.2d 1072. The Edmonds court therefore found that John L. Scott's disbursement method was not specifically permitted under chapter 18.85 RCW. Edmonds, 87 Wash.App. at 845, 942 P.2d 1072.
¶ 28 Recently in Stephens v. Omni Insurance Company, Division One held that an insurance company was not exempted from the CPA under RCW 19.86.170 because it failed to show that any regulatory agency specifically permitted its collection method. Stephens v. Omni Ins. Co., 138 Wash.App. 151, 173, 159 P.3d 10 (2007). It stated that "[t]he most that can be said is that no regulatory entity has prohibited it." Stephens, 138 Wash.App. at 173, 159 P.3d 10, accord Blaylock v. First Am. Title Ins. Co., 504 F.Supp.2d 1091, 1104 (W.D.Wash.2007) (finding the agency did not specifically permit the challenged conduct because the conduct was "not `required or permitted to be done' under the Insurance Code"); see also Sing, 83 Wash.App. at 68-69, 920 P.2d 589 (holding that although the complained of actions were related to specifically permitted actions, the complained of actions did not enjoy the same exemption from the CPA).
¶ 29 These cases all support the same proposition that unless a regulatory agency takes overt and affirmative actions to specifically permit actions and transactions within its authority, then such actions and transactions do not qualify as exemptions under the CPA. Here, the trial court did not find that the DOL specifically permitted Naegeli's alterations to the draft deposition transcripts, which included reducing the number of characters per inch and per line, inserting unnecessary tabbing, and creating new paragraphs, thus adding several additional pages to each transcript. WAC 308-14-135 does not address paragraphing and tabbing, and so does not specifically permit the changes Naegeli made. In rendering its oral decision, the trial court stated:
In light of the close control and regulation of the profession and practices, I find that the alleged actions or transactions complained of in the complaint under  as supported under the Consumer Protection Act are exempt under 19.86 of RCW.
. . .
Therefore, Ms. Singleton's complaint under the Consumer Protection Act must be dismissed as a matter of law. And that is under the exemption theory.
Report of Proceedings (RP) (May 12, 2006) at 13-14 (emphasis added).
¶ 30 In addition, it dismissed Singleton's CPA claim under general industry standards, reasoning that she failed to demonstrate the difference between general industry standards and the WAC. It then went on to hold: "And therefore, the Court denies the request of the plaintiff to maintain the Consumer Protection Act cause of action under general industry standards. This would be contrary to RCW 19.86, which prohibits the consumer protection claim where the agency is closely regulated by a state regulatory body." RP (May 12, 2006) at 14-15 (emphasis added).
¶ 31 Rather than finding Naegeli's conduct was specifically permitted by the regulatory agency, the trial court dismissed the case because the court reporting industry is closely regulated by a regulatory body. The fact of regulation does not rise to the standard set forth in Washington constituting a CPA exemption. See Vogt, 117 Wash.2d at 552, 817 P.2d 1364; Real Estate Litigation, 95 Wash.2d at 301, 622 P.2d 1185; Edmonds, 87 Wash.App. at 844, 942 P.2d 1072. Therefore, we find the trial court erred as a matter of law when it dismissed Naegeli's CPA claim.

*601 III. Motion for Reconsideration
¶ 32 In her opening brief, Singleton argues that the trial court erred as a matter of law when it denied her motion for reconsideration because the trial court's initial dismissal was contrary to law. Singleton is correct.
¶ 33 Under CR 59(a)(7), a trial court may vacate its decision, on motion of the aggrieved party, on the grounds that the decision was "contrary to law." We review a trial court's denial of a motion for a new trial under CR 59(a)(7) for an abuse of discretion. Aluminum Co. of Am. v. Aetna Cas. & Sur. Co., 140 Wash.2d 517, 537, 998 P.2d 856 (2000).
¶ 34 As discussed above, the trial court's initial dismissal of Singleton's CPA claim was contrary to law. Therefore, the trial court abused its discretion when it denied the motion for reconsideration of that decision.

IV. Attorney Fees
¶ 35 We make no determination concerning attorney fees because the CPA claim has not yet been litigated.
¶ 36 Reversed and remanded for trial.
We concur: HUNT and QUINN-BRINTNALL, J.
NOTES
[1] Upon Naegeli's motion for more definite statement, subsequent hearing, and order, Singleton filed her first amended complaint on March 3, 2006.
[2] A CR 12(b)(6) motion is one in which the court decides that as a matter of law there is a failure to state a claim upon which relief can be granted. A CR 12(b)(6) motion shall be considered under CR 56 if matters are presented to and not excluded by the court and all parties are given a reasonable opportunity to present all material made pertinent to a motion by rule 56. CR 12(b); Stevens v. Murphy, 69 Wash.2d 939, 943, 421 P.2d 668 (1966), overruled in part on other grounds by Merrick v. Sutterlin, 93 Wash.2d 411, 610 P.2d 891 (1980). Here, we cannot determine from the record that the trial court decided the matter under CR 56. Although its order lists additional materials it considered, the order and oral ruling expressly dismiss the contested claims under CR 12(b)(6) and "as a matter of law." Report of Proceedings (RP) (May 12, 2006) at 14. Additionally, neither Singleton nor Naegeli address CR 56 in their briefs under the assignments of error or issues; and Singleton does not specifically address rule 56 in her brief. We do not address an issue that has not been fully argued. Palmer v. Jensen, 81 Wash.App. 148, 153, 913 P.2d 413 (1996), remanded on other grounds, 132 Wash.2d 193, 937 P.2d 597 (1997); see also Ang v. Martin, 154 Wash.2d 477, 486, 114 P.3d 637 (2005); RAP 10.3(a)(6). Because of our decision to remand based upon CR 12(b)(6) a motion under CR 56 may still be made at the trial court level.
[3] Naegeli's reliance on Schaefco is inapposite. In Schaefco, the plaintiff failed to serve her motion for reconsideration on the opposing party within 10 days of the trial court's order. Here, Singleton filed and served her motion within 10 days of the trial court's order.
[4] The 1989 committee comment to CR 59 reads:

"Superior Court Civil Rule 59(b) allows a motion for new trial or for reconsideration to be `served and filed not later than 10 days after the entry of judgment.' There is no clear provision, however, on when the motion must be noted for hearing. Rule 59(e) allows the judge to set a hearing on his or her own motion only when the motion for new trial or reconsideration is filed before entry of judgment. Thus, a prevailing party who has obtained a judgment can be stymied in attempting to finalize an action if the motion is not noted. A similar situation prevails if the motion is noted but not heard for a lengthy period.
"The committee addressed the problem by adding a sentence to the first paragraph of section (b). The additional language requires the motion to be noted at the time it is filed and will supersede such local rules as King County Local Rule 59(b), which provides for noting `promptly' or in any event within 30 days after entry of judgment. The amendment also provides that the motion is to be `heard or otherwise considered within 30 days after the entry of judgment unless the court directs otherwise.' Because the judge may be unavailable during the 30-day period, the committee used the word `directs' rather than `orders,' so that the court clerk could adjust the schedule as necessary because of the judge's absence. It was the committee's intent, however, that exceptions to the 30-day period be limited primarily to such scheduling conflicts."
15 Karl B. Tegland, Washington Practice: Civil Procedure § 38.20, at 50 (1st ed.2003).
[5] The first proviso of RCW 19.86.170 is not relevant to this appeal. It reads:

PROVIDED, HOWEVER, That actions and transactions prohibited or regulated under the laws administered by the insurance commissioner shall be subject to the provisions of RCW 19.86.020 and all sections of chapter 216, Laws of 1961 and chapter 19.86 RCW which provide for the implementation and enforcement of RCW 19.86.020 except that nothing required or permitted to be done pursuant to Title 48 RCW shall be construed to be a violation of RCW 19.86.020.